ARTHUR McLANG, Appellant, v. H. CLIFFORD HARPER et al., Appellees.

No. 46780.

NOVEMBER 13, 1945.

Clay H. Jensen, of Sioux City, for appellant.

Stewart & Hatfield, of Sioux City, for appellees.

WENNERSTRUM, J.—Plaintiff, a taxpayer and an elector of the Independent School District of Sioux City, Iowa, on his own behalf and for other interested taxpayers, brought an action to enjoin the board of directors of that school district from

permitting the Jewish Federation, a corporation organized not for pecuniary profit, to occupy and use a vacant school building and its adjacent grounds as a community center. The trial court held that the school board did not have the right to lease the property to the federation and canceled the previously executed lease. It, however, permitted the federation to continue to occupy the school building, holding that it was not such a group or organization which could be denied the right to use school buildings under the Iowa law. Both plaintiff and defendants have appealed.

It is disclosed by the record that heretofore a lease was entered into by the Independent School District of Sioux City, Iowa, with the Jewish Federation for the rental by the federation of an unused school building and its adjacent grounds for a period of five years at $100 per month. The lease could be terminated by the lessor upon six-months' notice if the school directors desired to reopen the building for school purposes or if the lessor determined that the building was being misused by the lessee. It is further shown that the question of the leasing of the school property to the Jewish Federation was not submitted to the electors of the school district for determination and they were not given an opportunity to vote as to whether this lease should have been made. The evidence further discloses that due to the decline in school attendance the pupils heretofore attending this school were assigned to near-by schools. It is also shown that a considerable amount of money was saved by the school board in maintenance and service expense in closing the building; that it stood vacant from July 6, 1943, until August 1944, when the lease in question was entered into; that during the period it was not in use the building was damaged by reason of broken windows and frost damage to walls and floors; that the use of the building by the Jewish Federation did not interfere with full educational advantages being afforded to the pupils of the Independent School District of Sioux City, Iowa, and particularly to the pupils heretofore attending this school.

It is shown by the testimony of Mrs. Mary Hughes, executive secretary of the Community Chest Fund in Sioux City, and by other witnesses, that the Jewish Federation is a rec-

ognized receiving agency of the Community Chest Fund of Sioux City, and that to receive aid from this fund it is required that an agency render service to the public regardless of race, color, or creed. It is also shown that the federation, which operates the building in question as a community center, opens it to the general public with no restrictions as to race, color, or creed; that it maintains in the building a well-equipped library for the use of men in the military service and the general public; also a well-furnished canteen and entertainment center for the use of all men in the military service; that a public forum, which is open to the public, is conducted at least once a week in the building; that a teen-age canteen is also operated therein, and that during the summer the adjacent playground is used by children of some of the member patrons of the community center, as well as by neighborhood children. It is also shown that as a part of the service rendered at the community center there is a class where the Hebrew language and history are taught to Jewish children, but it is asserted by the appellees, which is supported by testimony, that no religious training is included in these classes. It is also disclosed that the Jewish Federation has expended about $4,000 in rehabilitating and refurnishing the building so that it might more effectively be used as a community center.

It is part of the record that prior to the bringing of the case now before us for review an appeal was taken to the County Superintendent of Schools of Woodbury county from the action of the school directors of the Independent School District of Sioux City, Iowa, in leasing the building to the federation. The county superintendent sustained and approved the action of the school board.

I. As heretofore stated, both plaintiff and defendants have appealed from the decree of the trial court. The defendants, who have been designated as appellees in this appeal, assert that the trial court was in error in holding that the directors of the Independent School District of Sioux City were without authority and power to lease the vacant school building to the Jewish Federation for community-house purposes.

One of the statutes that is applicable to the question that is before us is as follows:

"4217 Enumeration. The voters at the regular election shall have power to: * * *

"2. Direct the sale, lease, or other disposition of any schoolhouse or site or other property belonging to the corporation, and the application to be made of the proceeds thereof."

This statute distinctly states that the power to "direct the * * * lease, or other disposition of any schoolhouse or site or other property belonging to the corporation," shall be by vote of the electors of the school district at a regular election. We cannot come to any other conclusion than that the trial court was correct in holding, under the provisions of the statute, that the board of directors of the Independent School District of Sioux City, Iowa, was without authority to lease the schoolhouse to the Jewish Federation without submitting that question to the electors.

We have held in earlier decisions of this court that the sale or other disposition of schoolhouses and sites requires a vote of the electors. James v. Gettinger, 123 Iowa 199, 202, 98 N. W. 723; Barclay v. School Township, 157 Iowa 181, 186, 138 N. W. 395.

The present section of the Code, to which reference has heretofore been made, now also gives to the electors the power to lease school property. It is our judgment that the same holding which we have heretofore expressed as to the authority of the electors of a school district to direct the sale of schoolhouse property must in like manner be applied to the leasing of school property. Consequently we affirm the trial court on the appellees' cross-appeal.

▉ II. The plaintiff, who has also appealed and who has been designated as the appellant, asserts that under section 4371, as amended by chapter 166 of the Acts of the Forty-ninth General Assembly, the school directors are not permitted to authorize the use of school buildings for sectarian religious purposes. This section, as amended, now reads as follows:

"The board of directors of any school corporation may authorize the use of any schoolhouse and its grounds within

such corporation for the purpose of meetings of granges, lodges, agricultural societies, and similar rural secret orders and societies, for parent-teacher associations, for community recreational activities, for public forums and similar community purposes; provided, however, that the board may not grant such permission to any organization known or believed to hold views that are in conflict with the republican form of government as set forth in the constitution of the United States; and for election purposes, and for other meetings of public interest; provided that such use shall in no way interfere with school activities; such use to be for such compensation and upon such terms and conditions as may be fixed by said board for the proper protection of the schoolhouse and the property belonging therein, including that of pupils.''

There is nothing in the record which in any way indicates that the Jewish Federation is an organization that should be excluded from the use of the schoolhouse building under the previously quoted section. It is shown that the work done by this organization is of a community nature. It, however, is disclosed by the evidence that the community center as operated by the Jewish Federation is open to and used by persons who are not of the Jewish faith. A community center or building is a means by which individuals of a community may be afforded entertainment and also given an opportunity to obtain educational and cultural improvement. The benefits are received by both adults and juveniles. It is our conclusion, under the record in this case, that the building is being utilized in a way that will result in a benefit to those who make use of it for community purposes and will also result in an indirect benefit to the entire community. The applicability of the statute last quoted is challenged here solely on the ground that the use made is for sectarian religious purposes. There is no merit in the appellant's contention on this issue. We consider no other question.—Affirmed on both appeals.

All JUSTICES concur.